UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA ADRIANA GEROLD,<br>Plaintiff,<br>v.<br>KILOLO KIJAKAZI,<br>Defendant. | Case No. 21-cv-02217-SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND**<br>Re: Dkt. No. 18, 21 |

Before the Court are cross motions for summary judgment in this Social Security Act dispute. Plaintiff, Laura Adriana Gerold, moves for summary judgment, or remand, arguing the ALJ's decision is unsupported by substantial evidence. Dkt. No. 18 (Ptf's MSJ). Defendant, Kilolo Kijakazi, cross-moves for summary judgment arguing the ALJ's decision should be affirmed. Dkt. No. 21 (Def.'s MSJ). For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for remand and **DENIES** Defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff is a 49-year-old woman.[1] She completed high school, and has no specialized job training, or trade/vocational school education.[2] She reports past work as a food service trainee and medical bookkeeper.[3] Plaintiff filed her application under the Social Security Act for disability benefits on February 11, 2019.[4] Plaintiff's application listed the following conditions: fibromyalgia,

---

[1] Administrative Record ("AR") 240. Dkt. No. 13-7: Unknown date, Disability Report.

[2] *Id.*

[3] *Id.* at 241.

[4] AR 190. Dkt. No. 13-6: 02/11/2019, Application for Supplemental Security Income.

kidney disease, chronic fatigue syndrome, high blood pressure, back problems, uterine fibroid, varicose veins, heart problems, insomnia, and a hip problem.[5] On April 18, 2019, plaintiff's first disability claim was denied.[6] Plaintiff's application was denied for a second time on August 9, 2019.[7] On March 3, 2020, a hearing was held in front of Administrative Law Judge Cheryl Tompkin ("ALJ").[8] On April 3, 2020, the ALJ issued a decision finding plaintiff was not disabled.[9] The Appeals Council denied review and affirmed the ALJ's decision on January 27, 2020.[10] .

### I.  Plaintiff's Medical History

On June 29, 2018, plaintiff established care with Sophia S. Chen, D.O.[11] During the visit, Dr. Chen conducted an assessment of plaintiff's health and adopted a plan with recommendations on medications and treatments.[12] Dr. Chen made an internal referral for health coaching for plaintiff's chronic fatigue/fibromyalgia.[13] On February 1, 2019, plaintiff went to the emergency department complaining of "left sided neck and head pain."[14] A CT scan was "ordered to evaluate for the presence of aneurysms" and the final result was "abnormal."[15] Among other things, the CT revealed a "1.5 mm anteriorly projecting saccular aneurysm arising from the terminal segment of the left internal carotid artery."[16] During the same visit, a neurosurgical consultation was

---

[5] AR 239. Dkt. No. 13-7: 06/03/2019, Department of Social Services Disability Report.

[6] AR 86. Dkt. No. 13-4: 04/18/ 2019, Social Security Disability Explanation.

[7] AR 105. Dkt. No. 13-4: 08/09/2019, Social Security Disability Determination.

[8] AR 33. Dkt. No. 13-3: 03/03/2020, Transcript of ALJ Hearing.

[9] AR 25. Dkt. No. 13-3: 04/03/2020, ALJ Hearing Decision.

[10] AR 1-3. Dkt. No. 13-3: 01/27/2021, Social Security Admin.'s Notice of Appeal Denial.

[11] AR 873. Dkt. No. 13-12: 06/29/2018, Contra Costa Regional Medical Center Records.

[12] *Id*. at 875-76.

[13] *Id*. at 875-76.

[14] AR 310. Dkt. No. 13-8: 02/01/2019, Contra Costa Regional Medical Center Records.

[15] *Id.* at 313.

[16] *Id.* at 313.

1  recommended.[17] Dr. Chen referred plaintiff to Joseph Sinay, OT and on February 21, 2019, Dr.
2  Sinay evaluated plaintiff.[18]

3  Dr. Sinay found plaintiff "appears to have bilateral lower extremity, quadriceps and lower
4  back pain that impairs her trunk and lower extremity AROM and strength limiting her functional
5  capacity."[19] Dr. Sinay noted plaintiff reported "stinging pain on L arm and shoulder with certain
6  movements."[20] Additionally, Dr. Sinay stated plaintiff may benefit from a sedentary/light
7  occupation that does not require heavy lifting, carrying, pushing, pulling, prolonged sitting or
8  prolonged ambulation.[21] Dr. Sinay's evaluation indicated the following activities increased
9  plaintiff's pain: lifting more than fifteen pounds, carrying more than fifteen pounds for forty feet,
10 pushing and pulling more than 150 pounds for fifty feet, sitting for more than 28:56 minutes,
11 ambulating more than 1066 feet, descending stairs more than forty-two treads, and ascending stairs
12 more than forty-two treads.[22] He noted "musculoskeletal evaluative tests indicated elevated blood
13 pressure and pulse"[23] and recommended plaintiff participate in cardiovascular conditioning,
14 strengthening, and flexibility.[24] Medical records show plaintiff had a non-fluid gait.[25] Dr. Sinay
15 observed positive tender palpations at the lumbar/sacroiliac c region.[26] Dr. Sinay noted plaintiff met
16 "full physical demand requirement for standing [30 mins]."[27] The bilateral gross motor hand

---

[17] *Id.* at 312.

[18] AR 302. Dkt. No. 13-8: 02/21/2019, Contra Costa Regional Medical Center Records.

[19] *Id.* at 303.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 305.

[26] *Id.*

[27] *Id.* at 309.

3

function was noted low and bilateral overhead fine motor function was noted as poor.[28]

After the February 1, 2019 ER visit, plaintiff was referred to George J. Counelis, M.D. from Bay Area Neurosciences for a neurosurgical follow-up for the aneurysm.[29] On March 29, 2019, Dr. Counelis conducted a physical exam, concluded plaintiff had an "unruptured cerebral aneurysm," and discussed various treatment options.[30] On May 6, 2019, a pipeline vascular excluder device was successfully placed in plaintiff as treatment for the aneurysm.[31]

## II.  Medical Opinions

On February 26, 2019, plaintiff's treating physician, Dr. Chen, completed a physical assessment of plaintiff, filling out a page and a half questionnaire.[32] Dr. Chen's assessment included a diagnosis of chronic fatigue and fibromyalgia.[33] She also stated plaintiff's symptoms from her impairments are seldom severe enough to interfere with her attention and concentration when performing simple work-related tasks.[34] Dr. Chen mentioned plaintiff could only walk two blocks without rest or significant pain.[35] Dr. Chen further concluded: (1) plaintiff could sit and stand/walk in an eight-hour workday for zero hours[36]; (2) plaintiff would need unscheduled breaks every five to fifteen minute in a 8-hour workdays[37]; and (3) plaintiff could occasionally carry ten pounds or less but never more than twenty pounds.[38] Additionally, Dr. Chen indicated the percentage of time

---

[28] *Id*.

[29] *Id.*

[30] AR 505-506. Dkt. No. 13-8: 3/29/19, Bay Area Neurosciences Treatment Records.

[31] *Id.* at 510.

[32] AR 494-495. Dkt. No. 13-8: 2/26/19, Contra Costa Medical Center Physical Assessment.

[33] *Id*. at 494.

[34] *Id*.

[35] *Id*.

[36] *Id*.

[37] *Id*.

[38] *Id*.

4

1  during an 8-hour workday during which the plaintiff could use her hands and fingers: 30% for
2  grasping, turning, and twisting objects with both hands; 10% for fine manipulation of fingers; and
3  50% for reaching with both arms.[39] Finally, in Dr. Chen's opinion, plaintiff would need to be absent
4  from work for medical reasons more than four times a month.[40]

On April 15, 2019, Dr. W. Jackson MD, the licensed physician of DDS who conducted the evaluation for disability determination, concluded plaintiff's condition was not severe enough to prevent her from working, finding Dr. Chen's medical opinion was not persuasive because it lacked substantial support.[41] He stated plaintiff's allegations of fibromyalgia, chronic fatigue syndrome, and other impairments likewise lacked support.[42] According to Dr. W. Jackson, plaintiff could be expected to (1) occasionally lift twenty pounds, (2) frequently lift ten pounds, (3) sit, stand, and walk for a total of six hours in an eight-hour workday, and (4) push or pull for unlimited time.[43]

On June 21, 2019, Dr. Megan Stafford, Psy. D conducted a comprehensive psychological evaluation of plaintiff but did not review plaintiffs' records.[44] Dr. Stafford noted (1) plaintiff had appropriate hygiene and grooming; (2) was cooperative and polite; (3) had normal eye contact; (4) displayed shaking in her hands; (5) had a thought process grossly logical, organized and coherent; and (6) "no impairment in gait[.]"[45] After plaintiff was oriented three times with an item, she was able to remember 3/3 items immediately and 0/3 within three minutes; she was able to spell WORD forward but not backward.[46] She was also unable to answer what seven quarters equaled.[47] Dr.

---

[39] *Id*.

[40] *Id.* at 495.

[41] *Id*. at 83.

[42] *Id*. at 82.

[43] *Id*. at 81-2.

[44] AR 680. Dkt. No. 13-10: 06/21/2019, Psych. Eval. by Megan Stafford, Psy.D.

[45] *Id*. at 682-83.

[46] *Id*. at 683.

[47] *Id*.

5

1 Stafford used standardized tests to assess plaintiff's intelligence and memory: plaintiff scored "borderline intellectual functioning" range and her memory test performance placed her in the "Mild Intellectual Disability" range.[48]

Dr. Stafford found: (1) plaintiff could perform simple and repetitive tasks while plaintiff's ability to perform detailed and complex tasks had been moderately impaired[49]; (2) plaintiff's memory deficit and processing speed moderately impaired her ability to accept instructions from supervisors[50]; (3) plaintiff's memory, processing speed deficits, and emotional dysregulation moderately impaired her ability to complete a normal workday without interruptions[51]; and (4) plaintiff's "ability to deal with the usual stress encountered in the workplace is moderately impaired due to emotional dysregulation and limited coping skills."[52] Despite all these findings, Dr. Stafford concluded plaintiff's ability to regularly attend work was not impaired.[53]

On August 5, 2019, Dr. Chiang, M.D., the licensed physician member of the DDS who conducted plaintiff's disability determination, evaluated plaintiff's medical records.[54] Dr. Chiang, without an examination, concluded plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, frequently balance, frequently stoop, frequently kneel, frequently crawl, frequently crouch, sit/stand and or walk for about six hours in an eight-hour workday, and pull and/or push for an unlimited time.[55] Dr. Chiang rejected any manipulative, visual, or communicative limitations.[56] Dr. Chiang additionally concluded the diagnoses of fibromyalgia and chronic fatigue syndrome had

---

[48] *Id*. at 684.

[49] *Id*. at 685.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] AR 97-100. Dkt. No. 13-4: 08/05/2019, Social Security Disability Determination.

[55] *Id*. at 98-99.

[56] *Id*. at 99.

little supporting evidence.[57] He stated "impairments are listed along with her other conditions but without any description of the physical findings, especially recently."[58] Dr. Chiang acknowledged that although "the claimant does have a history of chronic kidney disease and there is mention of polycystic kidney disease," the evidence does not support renal failure.[59] Additionally, in the explanation section, he indicated "the claimant has a history of abdominal pain for which she has undergone an extensive evaluation without any clear diagnosis."[60]

On August 7, 2019, Dr. Robert Liss, Ph.D., another non-examining licensed physician member of the DDS who conducted plaintiff's disability determination, assessed plaintiff's records and concluded plaintiff can understand, remember, and carry out short and simple work-related tasks without significant limitations in her ability to sustain concentration/persistence, relate to others, or otherwise adapt to the normal workplace.[61] Dr. Liss acknowledged plaintiff's ability to carry out detailed instructions was moderately limited.[62] Similarly, other abilities as regular attendance, being punctual, performing activities within a schedule, keeping an ordinary routine without special supervision, coordinating with others without being distracted by them, and having the ability to make work-related decisions had not been significantly limited.[63]

### III. ALJ Hearing

During the ALJ hearing on March 3, 2020, plaintiff testified her last full-time job was between 2003-2006 at DMI Services in the radiology billing office, where her duties included clerical work, recordkeeping, and bookkeeping.[64] After DMI Services, plaintiff worked less than a

---

[57] *Id*.

[58] *Id*.

[59] *Id.*

[60] *Id*.

[61] AR 101. Dkt. No. 13-4: 08/07/2019, Social Security Disability Determination.

[62] *Id*.

[63] *Id*.

[64] AR 39- 41. Dkt. No. 13-3: 03/03/2020, Transcript of ALJ Hearing.

7

week at Safeway and Nation's Hamburgers – quitting both jobs due to the heavy physical demands she could not meet, being severely underweight and suffering from undiagnosed chronic illnesses.[65]

At the end of 2006, when plaintiff's health issues began, she was laid off from DMI Services.[66] She testified she was diagnosed with fibromyalgia and kidney disease in 2009.[67] Since then, Plaintiff testified her health conditions have only gotten worse.[68] If she joined her previous job today, she testified she would not be able to sit for longer than 15 to 20 minutes without pain in her hip joint, and difficulty standing.[69] Plaintiff could drive herself to appointments,[70] but only for twenty minutes without pain.[71] She drove herself twenty minutes to the court.[72] Plaintiff testified it is difficult to stay standing while cooking on the stovetop.[73] The vocational expert ("VE") testified that someone in plaintiff's position with the same limitations could not do her previous jobs.[74] The ALJ asked the hypothetical of whether an individual with plaintiff's limitations, including occasionally lifting twenty pounds, frequently lifting ten pounds, sitting, standing, or walking for six hours, frequently climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds, could seek alternative employment.[75] The VE testified there are alternative jobs including officer helper, unskilled cashier, and unskilled housekeeper the plaintiff could do.[76]

---

[65] *Id*. at 40.

[66] *Id*. at 42.

[67] *Id*.

[68] *Id*. at 43.

[69] *Id*. at 43-45.

[70] *Id*. at 47.

[71] *Id.* at 48.

[72] *Id.*

[73] *Id.* at 51.

[74] *Id*. at 63-74.

[75] *Id*. at 63.

[76] *Id*. at 64.

8

**IV.    ALJ's Written Decision: Findings re The Five Step Analysis to Determine Disability**

**Gainful Activity.**  The ALJ concluded plaintiff was not engaged in gainful activity.[77]

**Does plaintiff have a 'severe medically determinable physical or mental impairment**.' The ALJ found plaintiff "has the following severe impairments: fibromyalgia; chronic fatigue syndrome; status post for brain aneurysm; and mild neurocognitive disorder"[78] while indicating "these conditions were being managed medically and should be amenable to proper control by adherence to … medical management and compliance."[79]  The ALJ concluded the impairments are "nonsevere"[80] because "there is no objective medical evidence that documents these symptoms or conditions [which] resulted  from anatomical, physiological, or psychological abnormalities" and is "demonstrable by medically acceptable clinical or laboratory diagnostic techniques." [81]

**Whether the impairment 'meets or equals' one of those listed in the regulations.**  The ALJ concluded plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments," further noting, there are "no medical listings for fibromyalgia or chronic disease" and "no treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings …the same or equivalent to … any listed impairment."[82]  Furthermore, the ALJ stated the "claimant's mental limitation" caused "moderate limitation in the ability to understand, remember or apply information, mild limitation in interacting with others, moderate limitation in the ability to concentrate, persist, or maintain pace, and mild limitation in the ability to adapt or manage oneself."[83]  The ALJ also considered whether, despite plaintiff's diminished symptoms the

---

[77] AR 17. Dkt. No. 13-3: 04/03/2020, ALJ Decision.

[78] *Id.*

[79] *Id*. at 18.

[80] *Id*.

[81] *Id*.

[82] *Id.*

[83] *Id.*

evidence supports the finding that plaintiff could only achieve marginal adjustment (a minimal capacity to adapt to changes in environment or demands that are not already part of her daily life) and concluded "the record does not establish that the claimant has only marginal adjustment."[84]

**Whether plaintiff has the residual functional capacity to perform a range of light work.**
The ALJ concluded plaintiff has the residual functional capacity to perform a range of light work.[85] The ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[86] The ALJ concluded plaintiff "is able to perform work-related activities within the residual functional capacity assessed herein."[87] The ALJ found persuasive Dr. Stafford's diagnosis of "Mild Neurocognitive Disorder-provisional" because it was based on "personal observation and is consistent with the record as a whole."[88] Critically, the ALJ found Dr. Chen's assessment of the plaintiff not persuasive because it was "not supported by any objective findings or narrative explaining why the claimant has such severe limitations."[89]

The ALJ also evaluated the findings of Dr. Liss, a state-agency reviewing psychologist.[90] Dr. Liss concluded, among other things, that plaintiff "was moderately limited" in her ability to understand, remember, apply information, and concentrate, and could perform simple repetitive tasks.[91] The ALJ found Dr. Liss' assessment reasonable and persuasive because it was supported by the "doctor's review, summary of the [plaintiff's] activities of daily living and psychological test

---

[84] *Id.*

[85] *Id.*

[86] *Id.* at 20.

[87] *Id.*

[88] *Id.* at 21.

[89] *Id.* at 22.

[90] *Id.*

[91] *Id.*

10

results" as well as plaintiff's lack of mental health treatment and other findings in the record.[92] Based on Dr. Stafford and Dr. Liss's opinions, the ALJ concluded the claimant has "moderate functional limitations."[93] Therefore, "the claimant has not been deprived of the ability to perform work subject to the residual functional capacity assessed."[94]

**Whether plaintiff can still do her past relevant work.** The ALJ concluded plaintiff "is unable to perform any past relevant work."[95] This conclusion was based on the vocational expert's testimony that plaintiff "would not be able to perform this past relevant work as actually performed by claimant or as generally performed in the regional and national economy."[96]

**Whether considering claimant's age, education, work experience, and residual capacity, there are jobs that exist in significant numbers in the national economy that the claimant can do.** Considering plaintiff's age (48 years old), her high school education, and ability to communicate in English, combined with the vocational expert's testimony that plaintiff could meet the requirements for occupations as office helper, housekeeper and cashier, the ALJ concluded plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."[97] Consequently, the ALJ found plaintiff "not disabled[.]"[98]

## LEGAL STANDARD

The issue before the Court is whether the ALJ's decision is supported by substantial evidence in the record. *Chavies v. Finch*, 443 F.2d 356 (9th Cir. 1971). The Court may set aside a denial of benefits "'only if it is not supported by substantial evidence or if it is based on legal error.'" *Ukolov*

---

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.* at 23.

[96] *Id.*

[97] *Id.* at 23-24

[98] *Id.*

11

*v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)). "Substantial evidence means 'such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.'" *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (quoting *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986)). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence supporting and detracting from the ALJ's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the evidence provided is susceptible to "affirming or reversing" the ALJ's conclusion, "the court may not substitute its judgment." *Reddick v. Chater*, 157 F.3d 715, 720-721 (9th Cir. 1998).

Disability is the "inability to engage in any substantial gainful activity" due to a medically determinable physical or mental impairment which can be expected to result in death or which "has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d). Plaintiff bears the burden of establishing a prima facie case for disability. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). The burden shifts to the Commissioner at step five. *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).

An ALJ is required to employ a five-step sequential analysis to determine disability, examining: (1) whether the claimant is engaging in "'substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or the combination of impairments  has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity', the claimant can still do his or her 'past relevant work' and (5) whether the claimant 'can make an adjustment to other work'." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§404.1520(a), 416.920(a)).

A new standard outlined in 20 C.F.R. § 416.920c applies to claims filed on or after March 27, 2017. Medical opinions are evaluated based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c (2017). The

12

1 factors considered most important are supportability and consistency of the opinions with the
2 evidence from other medical and nonmedical source. ALJ's must explicitly state "how [they have]
3 considered the supportability and consistency factors" in their decision. *Id.* at § 416.920c(b)(2).
4 Other factors such as relationship with the claimant, frequency of examinations, extent of the
5 treatment relationship, and examining relationship may be explained but are not required. *Id.* at
6 § 416.920c(c). Under this new standard, the ALJ is not required to articulate "specific and legitimate
7 reasons" for rejecting a treating physician's opinion where the opinion is contradicted by other
8 medical opinions. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).

**DISCUSSION**

Plaintiff argues for remand or for summary judgment due to the ALJ's allegedly improper exclusion of the opinion of Dr. Chen, plaintiff's treating physician. Defendant moves for summary judgment arguing the ALJ's decision is more than adequately supported by substantial evidence. The Court agrees with plaintiff.

I. **The ALJ Improperly Discounted Dr. Chen's Medical Opinion**

Applying the new standard outlined in 20 C.F.R. § 416.920c, the Court finds the ALJ's erred in excluding Dr. Chen's RFC opinion. Under this new regulation, the ALJ will no longer give any specific evidentiary or controlling weight to any medical opinions. *See* 20 C.F.R. § 416.920c(a). However, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(b)(1). Plaintiff persuasively argues the ALJ's rejection of Dr. Chen's opinion is conclusory and unsupported, which fails to meet the standard required by the law. The Court agrees, for the reasons given below.

The Court must evaluate Dr. Chen's medical opinion based on the five factors outlined in C.F.R. § 416.920c.

**Supportability.** Under this factor, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920(c)(1).

The ALJ concluded Dr. Chen's findings are "not supported by any objective findings or narrative explaining why the claimant has such severe limitations."[99] Furthermore, the ALJ concluded that the record showed "minimally positive findings and conservative treatment for pain and in particular, no treatment for any upper extremity issues that would warrant such drastic restrictions."[100]

But the record shows Dr. Chen, completed a physical assessment of plaintiff including the diagnosis of chronic fatigue and fibromyalgia.[101] Dr. Chen further concluded: (1) plaintiff could only walk two blocks without rest or significant pain[102]; (2) plaintiff could sit and stand/walk in an eight-hour workday for zero hours[103]; (3) plaintiff would need unscheduled breaks every five to fifteen minute in a 8-hour workdays[104]; and (4) plaintiff could occasionally carry ten pounds or less but never more than twenty pounds.[105] Although Dr. Chen's physical assessment of plaintiff did not provide any further explanation, these conclusions were consistent with plaintiff's first visit with Dr. Chen where she reported chronic fatigue. [106] Furthermore, Dr. Sinay's February 21, 2019, evaluation for chronic fatigue and fibromyalgia included Dr. Chen as part of the "care team" and shows Dr. Chen's findings are supported by other examinations in the record.[107]

**Consistency.** Here, "the more consistent a medical opinion(s) or prior administrative

---

[99] *Id*. at 22.

[100] *Id.*

[101] AR 494. Dkt. No. 13-8: 2/26/19, Contra Costa Medical Center RFC Assessment.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] AR 330-331. Dkt No. 13-8: 06/29/2018, Contra Costa Health Services Records.

[107] *Id.* at 302.

14

medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). Substantial evidence does not support the ALJ's conclusion that Dr. Chen's findings "are not consistent with the claimant's physical examination findings and her activities of daily living. . . ."[108] The record shows Dr. Chen's opinions *were* supported by other clinical findings in the record. Even before establishing care with Dr. Chen, plaintiff reported "seven years of abdominal pain."[109] Furthermore, plaintiff persuasively argues Dr. Sinay's findings contradict the ALJ's conclusion and support Dr. Chen's medical conclusions. Ptf's MSJ at 14.

Dr. Sinay noted plaintiff's "bilateral gross motor hand function was in the low average range and her bilateral overhead fine motor function was poor." Ptf's MSJ at 14. Dr. Sinay observed:

> [plaintiff] appears to have bilateral lower extremity, quadriceps and lower back pain that impairs her trunk and lower extremity AROM and strength limiting her functional capacity. Pt also reports stinging pain on L arm and shoulder with certain functional movements. Pt may benefit from a sedentary/light occupation that does not require heavy lifting, carrying, pushing, pulling, prolonged sitting or prolonged ambulation.[110]

Dr. Sinay also noted

> musculoskeletal evaluative tests indicated blood pressure and pulse, increased tone on B gastrocnemius, unbalanced, asymmetrical posture, impaired posture tolerance for squatting, decreased SLR AROM/PROM on B hips, and decreased strength for L shoulder flexion, L shoulder ext rotation, L gluteal group, and L hip flexion with pain.[111]

In contrast, the ALJ found "[t]he record shows minimally positive findings and conservative treatment for pain and in particular, no treatment for upper extremity issues that would warrant such drastic upper extremity restrictions."[112] But plaintiff points out Dr. Sinay concluded plaintiff may

---

[108] AR 22. Dkt. No. 13-3: 04/03/2020, ALJ Hearing Decision.

[109] AR 347. Dkt No. 13-8: 03/01/2018, Contra Costa Health Services Records.

[110] AR 303. Dkt. No. 13-8: 02/21/2019, Contra Costa Regional Medical Center Records.

[111] *Id.*

[112] *Id.*

1   benefit from sedentary/light occupation which is consistent with Dr. Chen's findings regarding
2   plaintiff's physical impairments. Ptf's MSJ at 16.

3   Furthermore, plaintiff persuasively argues her testimony is consistent with Dr. Chen's
4   opinion. Ptf's MSJ at 16. Plaintiff testified she experiences hip pain when she sits too long, needs
5   to walk to alleviate pain, walking two blocks would take her thirty minutes, she has difficulty lifting
6   a twenty-pound cat litter box, she asks employees for help to get items off shelves when shopping,
7   and she leans on the counter when cooking.[113]

8   Plaintiff's daily activities – including her completion of household chores – do not
9   undermine Dr. Chen's opinion. The ALJ concluded that Dr. Chen's findings were inconsistent with
10  plaintiff's daily activities.[114] Plaintiff admitted to caring for her parents and preparing every meal.[115]
11  Plaintiff also testified to regularly doing dishes, laundry, shopping, and going to church. Def.'s MSJ
12  7-8. Defendant argues plaintiff's testimony that she regularly drove herself to appointments is
13  inconsistent with Dr. Chen's findings that plaintiff could only sit for less than an hour. *Id*. at 7. The
14  ALJ found Dr. Chen's opinion to be inconsistent with plaintiff's daily activities.[116]

15  Plaintiff persuasively cites *George D. D. L. v. Andrew Saul* to show the ALJ erred in relying
16  on plaintiff's daily activities to support its findings regarding plaintiff's residual functional capacity.
17  *George D. D. L. v. Saul*, No. 20-CV-03552-SK, 2021 WL 5205600 (N.D. Cal. Nov. 9, 2021). In
18  *George D. D. L.*, the claimant stated he could drive without much difficulty, take out the garbage
19  (weighing between five to ten pounds at most), and occasionally clean the dishes and parts of
20  bathroom from the waist high or below. *Id*. at 25. The court reasoned a "[d]isability does not mean
21  that a claimant must vegetate in a dark room excluded from all forms of human and social activity."
22  *Id.* at 23. Therefore, the court held the ALJ erred in relying on the claimant's daily activities to
23  support his residual functional capacity findings.

---

[113] *Id.* at 44-51.

[114] AR 22. Dkt. No. 13-3: 04/03/2020, ALJ Hearing Decision.

[115] AR 249. Dkt. No. 13-7: 03/25/2019, Social Security Administration Function Report.

[116] AR 22. Dkt. No. 13-3: 04/03/2020, ALJ Hearing Decision.

The ALJ erred in relying on plaintiff's testimony regarding her daily activities to support her residual functional capacity findings. Plaintiff testified her "hip joints get shooting pain" if she sits for 15 to 20 minutes and has to walk around to alleviate the pain.[117] Due to her hip joints, she is only able to stand for less than five minutes.[118] She also mentioned it took her thirty minutes to walk two blocks (very slowly).[119] She also has difficulty lifting a twenty-pound cat litter box.[120] When completing chores around the house, cleaning or cooking, the plaintiff testified she "found it difficult" to stand when cooking at the stove top and had to lean on the oven and use her other hand to stir.[121] When shopping, she asks employees for help to get items off the shelf.[122] Although the plaintiff is able to complete daily activities, she often cannot do so without discomfort and sometimes even pain.

Therefore, Dr. Chen's opinion is consistent with the record and the ALJ erred by excluding Dr. Chen's findings and opinion.

**Relationship with claimant/Length of treatment and frequency of examinations.** The Court must consider (1) the length of treatment relationship; (2) frequency of examinations; (3) purpose of the treatment relationship; (4) extent of the treatment relationship; and (5) examining relationship. 20 C.F.R. § 416.920c(c)(3).

Dr. Chen established care with plaintiff on June 29, 2018.[123] Plaintiff also visited Dr. Chen on July 30, 2018, and August 28, 2018.[124] Furthermore, Dr. Chen submitted medication orders for plaintiff on January 24, 2019, July 24, 2018, July 5, 2018, and August 26, 2018, showing she was

---

[117] *Id.*

[118] AR 45. Dkt. No. 13-3: 03/03/2020, Transcript of ALJ Hearing.

[119] *Id*.

[120] *Id*. at 48.

[121] *Id.* at 51.

[122] *Id.*

[123] AR 873. Dkt. No. 13-12: 06/29/2018, Contra Costa Regional Medical Center Records.

[124] *Id.* at 328, 323.

aware of plaintiff's medical conditions, pain levels, and medical needs.[125] On Dr. Sinay's evaluation for chronic fatigue and fibromyalgia dated February 21, 2019, Dr. Chen appears as part of plaintiff's "care team" which shows Dr. Chen had an understanding of plaintiff's impairments. Thus, both factors show Dr. Chen has a longitudinal understanding plaintiff's impairment.

**Purpose of the treatment relationship.** During the first visit with plaintiff, Dr. Chen conducted an assessment including the diagnosis of chronic fatigue and fibromyalgia.[126] Dr. Chen made a referral for this diagnosis[127] which shows Dr. Chen had knowledge and awareness of plaintiff's impairments. The record reflects Dr. Chen is plaintiff's treating physician with a history of involvement in plaintiff's medical care. Thus, this factor disfavors excluding Dr. Chen's findings.

**Extent of the treatment relationship.** As stated above, Dr. Chen made a referral for plaintiff's diagnosis of chronic fatigue and fibromyalgia. Dr. Chen was involved in Dr. Sinay's physical evaluation of plaintiff and also herself conducted a physical assessment of plaintiff's limitations. This is contrary to Dr. Liss, who only reviewed the evidence on the record and failed to conduct an examination of plaintiff. Clearly, Dr. Chen had an understanding regarding plaintiff's impairments. Thus, this factor disfavors excluding Dr. Chen's findings.

**Other factors.** Due to the evidence Dr. Chen's findings were both supported and consistent with the record, the Court do not need to address other factors to make its determination the ALJ erred when rejecting Dr. Chen's findings.

In conclusion, the ALJ erred in discounting the plaintiff's testimony about her recurring pain when completing daily activities and the ways her medical issues and diagnoses impact her life.

**II.    Remand is Proper**

Having found the ALJ erred, the Court must now determine whether to grant summary judgment and award plaintiff benefits, or to remand the matter for further administrative proceedings

---

[125] *Id*. at 317, 328, 332.

[126] *Id*. at 494.

[127] *Id*. at 875-76.

including a de novo hearing and new decision. When reviewing an ALJ's decision, a court may remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The decision is within this Court's discretion. *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988). To determine when evidence should be credited and an immediate award of benefits should be granted the Ninth Circuit examines whether "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

**Whether the ALJ failed to provide sufficient reasons for rejecting evidence.** As discussed at length above, the ALJ improperly excluded the opinion of plaintiff's treating physician, Dr. Chen, regarding plaintiff's physical limitations, and instead adopted the opinion of a non-examining medical consultant, Dr. Liss. The ALJ simply stated Dr. Liss' assessment is reasonable and persuasive because it is supported by the "doctor's review, summary of the [plaintiff's] activities of daily living and psychological test results" as well as plaintiff's lack of mental health treatment.[128] The ALJ did not provide any citations to the record to justify reliance on Dr. Liss' findings. In contrast to Dr. Liss' conclusory allegations, Dr. Chen's opinions are consistent and supported by plaintiff's medical records showing she repeatedly complained about chronic fatigue and fibromyalgia.[129] The record also shows a diagnosis of chronic fatigue from November 11, 2012.[130] Thus, the ALJ failed to provide legally sufficient reasons for rejecting evidence – namely the opinions of Dr. Chen.

**Whether there are no outstanding issues that must be resolved before a determination of disability can be made.** The vocational expert testimony failed to consider the improperly discredited findings of Dr. Chen and Dr. Sinay. "In cases where the testimony of the vocational

---

[128] *Id.*

[129] *Id.* at 298-493.

[130] *Id.* at 322.

1  expert has failed to address a claimant's limitation as established by improperly discredited
2  evidence, [the court] has consistently remanded for further proceedings rather than payment of
3  benefits." *Harman*, 211 F.3d at 1180. The ALJ asserted an incomplete hypothetical to the
4  vocational expert which excluded Dr. Chen's findings.[131] In response to this hypothetical, the
5  vocational expert testified that plaintiff has a residual capacity to perform the requirements for three
6  alternative occupations: office helper, housekeeper, and cashier.[132] It is unclear whether the
7  vocational expert's testimony would be different if the hypothetical would have included the
8  improperly excluded medical findings. The ALJ heavily relied on the VE testimony to conclude
9  there are significant number of jobs in the national economy that the plaintiff can perform.[133]

Therefore, the Court finds there are sufficient unanswered questions in the record to remand the case for further proceedings.

### III.   CONCLUSION

For the forgoing reasons, the Court **GRANTS** plaintiff's motion for remand for a de novo hearing and new decision, this time considering Dr. Chen's opinions. The Court **DENIES** defendant's and plaintiff's motion for summary judgment.

**IT IS SO ORDEED.**

Dated: August 4, 2022

_____
SUSAN ILLSTON
United States District Judge

---

[131] AR 63-64. Dkt. No. 13-3: 03/03/2020, Transcript of ALJ Hearing.

[132] *Id*.

[133] AR 24. Dkt. No. 13-3: 04/03/2020, ALJ Hearing Decision.